WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judy Plotts,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Chester Cycles LLC, et al.,<br><br>　　　　　　Defendants. | No. CV-14-00428-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Plaintiff Judy Plotts' motion for partial summary judgment (Doc. 175), Defendant Chester Cycles LLC's motion to disqualify Burch & Cracchiolo, P.A. ("Plaintiff's Counsel") (Doc. 161), E.B. Chester's ("Mr. Chester") motion to intervene (Doc. 157), Defendant's motion for leave to file a second, limited, motion for partial summary judgment (Doc. 176), Plaintiff's motion to strike Defendant's motion for leave (Doc. 177), Defendant's cross-motion for partial summary judgment (Doc. 188), Defendant's motion to strike Plaintiff's motion for partial summary judgment (Doc. 190), Plaintiff's motion to strike Defendant's cross-motion for partial summary judgment (Doc. 196), Defendant's cross-motion for sanctions (Doc. 200), and both parties' motions to seal (Docs. 159, 183). For the following reasons[1] Plaintiff's motion for partial summary judgment is denied, Defendant's motion to disqualify Plaintiff's Counsel is granted, Defendant's motion for leave and cross-motion for sanctions are denied, Mr. Chester's motion to intervene is denied, all motions to strike as well as

---

[1] On February 5, 2016, the Court held oral argument on the pending motions.

Defendant's cross-motion for partial summary judgment are vacated, and the motions to seal are granted.

## BACKGROUND

Plaintiff's allegations regarding Defendant's culpable conduct under 42 U.S.C. § 2000e-2(a)(1) ("Title VII") have been summarized in the Court's previous orders. Pertinent to the instant motion, Plaintiff alleges that Defendant Chester Cycles, LLC ("Chester Cycles") is a Nevada limited liability company doing business in Maricopa County, Arizona and which formerly owned and operated the Chester's Harley-Davidson Mesa dealership in Mesa, Arizona ("Chester Mesa").[2] Pl.'s Statement of Facts Supp. Mot. Part. Summ. J. ("PSOF") ¶ 11. Chester Cycles was one of a group of Harley-Davidson dealerships operating under the Chester name—the other dealerships are located in Nevada, Idaho, Wyoming, and Florida (collectively referred to as the "Chester Dealerships"). PSOF ¶¶ 15 (*citing* Doc. 158, Ex. 2 ¶ 6), 17. The other Chester Dealerships are not parties to this lawsuit. Non-party Chester Group, LLC is the 100% owner of non-party Chester PowerSports. PSOF ¶ 16, Ex. O at 153:1–12. Chester PowerSports, in turn, owns four subsidiaries that each own and operate one of the Chester Dealerships. DSOF ¶ 16, Ex. 9 ¶ 4. Thus, because Chester Group owns Chester PowerSports, and Chester PowerSports owns the subsidiaries that own the Chester Dealerships, Chester Group is the "ultimate parent and 100% owner of three subsidiaries and the majority owner of a fourth subsidiary" that each own and operate one of the Chester Dealerships. PSOF ¶ 16 (*citing* Doc. 158, Ex. 2 ¶ 6); DSOF ¶ 18, Ex. 9 ¶ 4. The Chester Dealerships share the common Chester name, but they are each structured as independent businesses. DSOF ¶ 17, Ex. 5 at 13:8–18. The Nevada, Wyoming, and Idaho dealerships also each operate retail clothing stores located separately from the dealerships. PSOF ¶ 19, Ex. O at 61:15–62:2. Chester Group's office is located adjacent to the Chester Mesa dealership. PSOF ¶ 23, Ex. P at 16; DSOF ¶ 20, Ex. 10 at 28:2–

---

[2] Defendant represented at oral argument that a third-party recently closed on a 100% asset purchase of Defendant Chester Cycles LLC. The sale does not affect this litigation, however, since Chester Cycles still retains its liabilities including the potential liability raised by this lawsuit.

29:16.

Chester Group possessed the payroll records for each of the Chester Dealerships. PSOF ¶ 21, Ex. P at 16:14–17:2. Chester Group's director of operations controlled the operations of all Chester Dealerships. PSOF ¶ 26, Ex. O at 70:8–13. Decisions about the hiring or firing of an employee, however, were never made singly by the director of operations but also included the input of the general manager of the particular dealership making the personnel decision. DSOF ¶ 26, Ex. 2 at 21:5–12. Plaintiff alleges that Chester Group owners and employees were responsible for authorizing wages, wage increases, and bonuses. PSOF ¶ 29, Exs. V, U, W. Defendant argues to the contrary that the general managers of the dealerships acted autonomously from the owners when it came to decisions regarding subjects like wages, wage increases, and bonuses. DSOF ¶ 29, Ex. 4 at 48:3–13.

Vickie Freeman provided limited advisory human resources services for Chester Group and the Chester Dealerships. PSOF ¶ 30, Ex. O at 27:13–21; DSOF ¶ 30, Ex. 5 at 162:13–163:1. Ms. Freeman's primary role included taking care of administrative tasks like organizing paperwork and maintaining employment files for Chester Group and all of the Chester Dealerships. PSOF ¶¶ 31, 33, 35, Ex. O at 101:16–22; DSOF¶ 34, Ex. 2 at 22:15–20. Freeman maintained and updated the employee handbook distributed to all of the dealerships. PSOF ¶ 36, Ex. O at 101:23–102:2; DSOF ¶¶ 35, 36. Plaintiff alleges that Freeman also handled the health and auto insurance needs for all of the Chester Dealerships. PSOF ¶ 37, Ex. O at 127:4–6. Freeman further dealt with reporting, new hires, workers compensation claims, customer issues, and third-party contract disputes for all of the Chester Dealerships. PSOF ¶ 40, Ex. C at 19–23.

Plaintiff posits that certain Chester Group owners served in integrated managerial roles over all of the Chester Dealerships. *See, e.g.*, PSOF ¶¶ 54, Ex. O at 53:12–54:1. The owners acted as Dealer Operators and assisted with some personnel decisions. PSOF ¶ 73, Ex. O at 30:6–31:3; DSOF ¶ 73, Ex. 5 at 31:11–23. And at least as to the Chester Mesa dealership, an owner acting as a Dealer Operator assisted with tactical decisions related to marketing and expansion. PSOF ¶ 81, Ex. Q at 65. Otherwise, general

1 managers handled the day-to-day business of the Chester Dealerships. PSOF ¶ 107, Ex.
2 O at 40:17–41:15, 55:5–10.

All Chester Dealerships share the same employee handbook. PSOF ¶ 82, Ex. O at 24:10–22, 25:10–25. On rare occasions employees were transferred from one Chester Dealership to another. PSOF ¶ 93, Ex. O at 29:2–5; DSOF ¶ 93, Ex. 5 at 28:9–29:16. The Chester Dealerships' websites advertise the ability for employees to transfer between Chester Dealership locations. PSOF ¶ 94, Ex. R. All Chester Dealerships utilized the same management software as well as other software programs. PSOF ¶¶ 97, Ex. P at 12, 100, Ex. Q.

## DISCUSSION

### I. Plaintiff's Motion for Partial Summary Judgment

#### A. Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Although "[t]he evidence of [the non-moving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment," and evidence must be authenticated before it can be considered. *Orr v. Bank of Am.*, 285 F.3d 764, 773–74 (9th Cir. 2002).

### B. Analysis

42 U.S.C. § 1981a governs the damages available to a plaintiff bringing a claim under Title VII. In addition to outlining criteria relevant to the calculation of compensatory and punitive damages, the statute "sets a cap on certain types of compensatory damages, combined with punitive damages." *Ariz. v. ASARCO LLC*, 773 F.3d 1050, 1056 (9th Cir. 2014). The cap differs depending on the number of employees employed by the relevant employer. *Id.* (*citing* § 1981a). At the high end, the cap allows for $300,000 in certain designated damages for an employer with more than 500 employees; and at the low end, the cap limits employers with more than 14, but fewer than 101, employees to $50,000 in possible damages. §§ 1981a(b)(3)(A), (D); *see also* § 1981a(b)(3) (delineating the available damages as the "sum of the amount of compensatory damages awarded under this section for pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," along with punitive damages). Thus, determining which entity or entities constitute the relevant employer is central to determining a plaintiff's possible recovery. Here, Plaintiff argues that the Court should determine the following: first, that as a matter of law, the four factor single employer test typically used for determining statutory coverage under Title VII also applies to determining the number of employees

relevant to § 1981a(b)'s damages cap; and second, that Defendant and its other allegedly related non-party entities, including Chester Group and all of the Chester Dealerships across the country, do in fact constitute a single employer for purposes of calculating the damages cap.

### 1. The Four Factor Single Employer Test

The Ninth Circuit applies a four factor test to determine whether distinct entities constitute a single employer for purposes of Title VII. *See, e.g.*, *Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1383 (9th Cir. 1995). The factors considered are: "1) inter-relation of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership or financial control" ("four factor single employer test"). *Id.* (citation omitted)*; see also Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 929 (9th Cir. 2003). Plaintiff contends that the four factor single employer test is applicable to determining the scope of the employer used in calculating the number of employees relevant to establishing § 1981a(b)'s damages cap.

In *Caudle v. Bristow Optical Co.*, 224 F.3d 1014 (9th Cir. 2000), the Ninth Circuit held that the district court did not abuse its discretion when it denied plaintiff's post-trial motion to have the defendant and "its non-party corporate relative . . . declared a 'single employer' for purposes of applying the liability cap imposed by . . . § 1981a(b)(3)." *Id.* at 1021. The district court determined that the record as developed at trial provided an "insufficient [basis] to support an informed judgment on the issue of [the non-party's] relationship to [defendant]." *Id.* at 1022. The post-trial motion, according to the district court, did not provide the defendant or the related non-party entity a chance to present evidence at trial refuting their relationship in order to limit the damages cap to the lowest possible amount. *Id.* Without first granting the parties the ability to present such evidence, the court could not enter an informed judgment on the issue. *Id.* Accordingly, the Ninth Circuit held that the district court's ruling did not amount to an abuse of discretion. *Id.* In so doing, the *Caudle* court also tacitly acknowledged the applicability

of the four factor single employer test in the context of § 1981a(b)'s damages cap calculation when it acknowledged that "in *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039 (W.D.N.Y. 1997), a plaintiff who sought to evade the $200,000 cap on damages for employers with fewer than 501 employees under . . . § 1981a(b)(3)(D) successfully moved after trial to have the defendant and several non-party hotels owned by the same person to be declared a single employer." *Caudle*, 224 F.3d at 1022 n.5. The court in *Greenway* applied the same four factor single employer test analyzed in *Herman*. *Greenway*, 951 F. Supp. At 1056.

Defendant counters that while courts apply the four factor single employer test to determine whether an employer falls within the statutory grasp of Title VII's fifteen employee requirement, *see* § 2000e(a), the rule cannot be extended to determine the number of employees applicable to § 1981a(b)'s damages cap. The Defendant cites no case for this proposition, which as *Caudle's* citation of *Greenway* demonstrates, *Caudle* tacitly rejects.   And notwithstanding the *Caudle* court's tacit adoption of the four factor single employer test, when the question arises as to whether multiple entities constitute a single employer in the general context of Title VII cases, the Ninth Circuit has consistently applied the four factor single employer test[3] cited by Plaintiff and originally applied in *Childs*.   *See, e.g.*, *Childs v. Elec. Workers, et al.*, 719 F.2d 1379, 1382 (9th Cir. 1983) *abrogated on other grounds by Swift v. Realty Execs. Nev.'s Choice*, 211 F. App'x 571, 572 (9th Cir. 2006); *Anderson*, 336 F.3d at 929; *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002); *N.L.R.B. v. Don Burgess Const. Corp.*, 596 F.2d 378, 384 (9th Cir. 1979).

Further support for applying the four factor single employer test in this context comes from other Circuits, where "a number of courts . . . have determined that the inquiry into the identity of an employer for liability purposes is equivalent to the inquiry for determining the relevant employer when applying the statutory cap on punitive

---

[3] The test is also commonly referred to as the integrated enterprise test. *See, e.g.*, *Anderson*, 336 F.3d at 929.

- 7 -

damages." *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 156 (S.D.N.Y. 2003) (*quoting Campbell v. Int'l Bhd. of Teamsters*, 69 F. Supp. 2d 380, 384 (E.D.N.Y. 1999) (*citing Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995))); *see also Vance v. Union Planters Corp.*, 209 F.3d 438, 447 (5th Cir. 2000); *Goodwin v. Seven-Up Bottling Co. of Phil.*, 1998 WL 438488, at *8 (E.D. Pa. July 31, 1998) (*citing NLRB v. Browning-Feris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)); *E.E.O.C. v. 704 HTL Operating, LLC*, 2013 WL 5273219, at *5 (D.N.M. Aug. 16, 2013) (*quoting Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002 (*en banc*)); *MacGregor v. Mallinckrodt, Inc.*, 2003 WL 23335194, at *9 n.9 (D. Minn. July 21, 2003) (*citing Baker v. Stuart Broad. Co.*, 560 F.2d 389, 392 (8th Cir. 1977)); *Story v. Vae Nortrak, Inc.*, 214 F. Supp. 2d 1209, 1210 (N.D. Ala. 2001) (specifying that the 'law of the case' as determined by the Eleventh Circuit is that the single entity inquiry is applied in determining the size of the employer); *cf. U.S. E.E.O.C. v. Custom Cos., Inc.*, 2007 WL 734395, at *4–5 (N.D. Ill. Mar. 8, 2007) (*citing Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir. 1999)) (applying a similar but not duplicate single employer test in the context of § 1981a(b)'s damages cap).

Defendant argues that this Court's previous order on summary judgment controls and precludes Plaintiff's attempt to consolidate Defendant and its separate entities into one employer. (*See* Doc. 147.) In the context of refusing to allow Plaintiff leave to conduct additional discovery pursuant to Federal Rule of Civil Procedure 56(d), and in turn postponing a ruling on the Defendant's pending motion for summary judgment, the Order observed that the "appropriate count of employees, upon which the determination of the proper damages cap is based, should be limited to those employees of Chester Cycles because neither [alleged related entities] are Defendants in this Title VII action." (*Id.* at 8.)

Nevertheless, the Court, in so stating, had not had occasion to consider the *Caudle* discussion. As the *Caudle* court made clear, since consolidation for purposes of counting employees to raise or lower the damages cap does not, itself, create liability for a

1 previously unnamed non-party, but rather considers the consolidated entity solely for the
2 purpose of determining liability for the named party, the consolidated entity need not be a
3 party. *Caudle*, 224 F.3d at 1022 n.4 ("We agree with [plaintiff] that the district court
4 erred insofar as it suggested that [the non-party related entity] had to be a named party-
5 defendant in the suit before it could be found to form a "single employer" with
6 [defendant]. Such a finding would result in no legal judgment against [the non-party
7 related entity] itself, and, if [the non-party related entity's] relationship with [defendant]
8 were in fact so close that it satisfied the criteria for a 'single employer,' it would be
9 difficult to maintain credibly that [the non-party related entity] lacked sufficient notice of
10 its increased exposure through [defendant's] heightened liability under § 1981a."); *see
11 also Parrish*, 280 F. Supp. 2d at 156 ("[Plaintiff] is not attempting to impose liability on
12 [defendant's] other dealerships despite the fact that [plaintiff] was not employed by them,
13 but to include the employees of these entities in determining the size of the relevant
14 employer, the "respondent" for the purposes of 42 U.S.C. § 1981a(b)(3). . . . The Court is
15 persuaded that the two inquiries are distinct because at issue here is only the size of the
16 employer, not the liable entity, which has already been determined . . . .").

17 Plaintiff timely raises the issue. Accordingly, the Court now clarifies that the non-
18 party status of the entities Plaintiff argues are related to Defendant is irrelevant to the
19 application of the four factor single employer test to determine whether the entities'
20 employees should be counted for purposes of determining § 1981a(b)'s damages cap. It
21 previously indulged itself in dicta in denying Plaintiff's motion for discovery and corrects
22 it now in light of the law's dictates otherwise. No additional parties shall be added, and
23 the Court will not allow the parties to reopen discovery in an attempt to discover facts
24 that were previously not sought. Discovery is closed, therefore, the Court will have to
25 decide in individual circumstances whether evidence already discovered is admissible or
26 issues have been preserved.[4]

---

28 [4] Since the Court holds that the four factor single employer test is, as a matter of law, the appropriate tool to determine the number of employees relevant to calculate § 1981a(b)'s damages cap, the Court does not address Plaintiff's second argument in the

- 9 -

### 2. Whether Defendant Chester Cycles and Its Alleged Related Non-Party Entities Constitute a Single Employer Is a Question for the Jury

The four factor single employer test requires an inquiry that is heavily factual. *See Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000) (noting that the single employer test requires a factual inquiry). And on a motion for summary judgment, the presence of any genuine dispute of material fact precludes the entry of judgment in favor of the moving party. *See Anderson*, 477 U.S. at 248. A fact issue is material if it is one that may affect the outcome of the suit, *id.*, and a "fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" *Villiarimo*, 281 F.3d at 1061 (*quoting Anderson*, 477 U.S. at 248). Here, both parties provide controverting statements of facts going to each factor of the four factor single employer test. The facts are material as they go directly to the inter-relatedness between Defendant and its alleged non-party entities, and deal with factual constructs like, *inter alia*, levels of control by one entity over the other, overlapping responsibilities between different entities and different employees within those entities, as well as Chester Group's and the Chester Dealerships' overall corporate structure and governance. The facts are also genuine since a reasonable jury could conclude that Defendant Chester Cycles is not so inter-related with Chester Group and the other Chester Dealerships that they constitute a single employer under § 1981a(b)'s damages cap calculation. A jury not the Court, therefore, is the appropriate body to make this factual determination. *See, e.g.*, *Goodwin*, 1998 WL 438488, at *8–9 (submitting single employer issue to jury); *E.E.O.C. v. Moreland Auto Grp., LLLP*, 2012 WL 2974670, at *2 (D. Colo. July 20, 2012) (acknowledging on a motion for summary judgment that "a jury could find that defendants are an integrated enterprise based on the four factors of the . . . 'single employer' test."). Accordingly, summary judgment is denied on the ultimate issue of whether Defendant and its other allegedly related non-party entities constitute a single employer.

---

alternative to apply the "joint employer" test. *See E.E.O.C. v. Pac. Maritime Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003).

- 10 -

### 3. The Court, Not the Jury, Ultimately Determines the Number of Employees Counted Towards § 1981a(b)'s Damages Cap

There are two steps in determining § 1981a(b)'s damages cap—one completed by the jury and the other completed by the Court. First, the jury must apply the facts of the case to the four factor single employer test and decide whether Defendant and its other allegedly related non-party entities constitute a single employer. *See Herman*, 60 F.3d at 1383 (citation omitted). The jury, however, is never informed of the damages cap itself. § 1981a(c)(2) ("[T]he court shall not inform the jury of the [damages cap]."). Then, once the jury determines the relevant employer for the purposes of § 1981a(b)'s damages cap—either Defendant alone or Defendant and its non-party entities—the task of calculating the actual number of employees employed by the employer is left to the Court. See *Cassella v. Mineral Park, Inc.*, 2010 WL 2889881, at *1 (D. Ariz. July 21, 2010) (*quoting Smith v. Norwest Fin. Wyo.*, 964 F. Supp. 327, 330 (D. Wyo. 1996) ("[T]he Court, not the jury, must determine the number of employees employed by the Defendant.")). Thus, although the jury decides whether multiple entities constitute a single employer, the Court, ultimately determines the number of employees that shall count towards applying § 1981a(b)'s damages cap.

### C. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED; although, the Court holds that the four factor single employer test is, as a matter of law, appropriate for determining the scope of the employer by which the number of employees applicable to determining § 1981a(b)'s damages cap is calculated, and is an issue preserved for trial.

## II. Defendant's Motion to Disqualify Plaintiff's Counsel

Thomas Longfellow is an attorney at Burch & Cracchiolo, P.A. ("Plaintiff's Counsel"). Attorneys of Plaintiff's Counsel represent Plaintiff in this matter; however, Mr. Longfellow has not appeared in this case. Nonetheless, Mr. Longfellow represented E.B. Chester ("Mr. Chester") in his 2011–12 marital dissolution. Mr. Chester is not a party to this action, but he owns approximately a one-third interest in Chester Group,

- 11 -

1  LLC. Chester Group is the parent company that owns Defendant Chester Cycles through
2  an intermediate subsidiary Chester PowerSports LLC. During the former representation,
3  Mr. Chester communicated "confidential information about the business and assets of
4  Chester Group, LLC" to Mr. Longfellow as part of a property settlement related to the
5  divorce proceedings. (Doc. 158, Ex. 2 ¶ 7.) Defendant now seeks the imputed
6  disqualification of Plaintiff's Counsel pursuant to Arizona's Rules of Professional
7  Conduct 1.9 and 1.10 due to Mr. Longfellow's former representation of Mr. Chester in
8  his divorce.

### A. Legal Standard

To avoid the use of ethical rules for the tactical disqualification of opposing counsel, Arizona law provides that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (explaining that disqualification motions should be subjected to "particularly strict scrutiny" because of their potential for abuse); *In re Cnty. of L.A.*, 223 F.3d 990, 996 (9th Cir.2000) ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."). The moving party has the burden of showing that the Court should disqualify an attorney from representing her client. *Alexander v. Super. Ct.*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984); *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 377, 93 P.3d 1086, 1093 (Ariz. Ct. App. 2004).

"To preserve the integrity of the judicial system close or doubtful cases should be resolved in favor of disqualification." *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, at *6 (D. Ariz. Nov. 5, 2009) (*citing Faison v. Thornton*, 863 F. Supp. 1204, 1216 (D. Nev. 1993)). However, because of the "great prejudice often associated with an enforced change of counsel, courts applying these standards have granted disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation." *Id.* (*quoting Complaint of Korea Shipping Corp.*, 621 F. Supp. 164, 169 (D. Alaska 1985)). "Whenever possible the courts should endeavor to

1 reach a solution that is least burdensome upon the client or clients." *Alexander*, 685 P.2d
2 at 1313. The Court has no "rule of automatic disqualification," and will instead consider
3 a number of factors in determining whether disqualification is warranted. *Research*
4 *Corp. Techs., Inc. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 701 (D. Ariz. 1996). These
5 factors include "(1) the nature of the ethical violation, (2) the prejudice to the parties,
6 including the extent of actual or potential delay in the proceedings, (3) the effectiveness
7 of counsel in light of the violations, . . . (4) the public's perception of the profession" and
8 "whether or not a motion to disqualify has been used as a tactical device or a means of
9 harassment." *Id.* at 703.

### B. Duty to a Former Client

ER 1.10 holds that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by ERs 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." ER 1.9 governs a lawyer's duty to a former client and dictates that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." ER 1.9(a). Mr. Chester did not give written informed consent, therefore, disqualification hinges on whether Mr. Longfellow's former representation of Mr. Chester in his divorce is substantially related to Plaintiff's Counsel's current representation of Plaintiff in her Title VII claim against Defendant Chester Cycles and whether that representation is materially adverse to Mr. Chester.

### 1. Substantially Related

"Matters are 'substantially related' for purposes of [ER 1.9] if . . . there [] is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the

subsequent matter." ER 1.9, cmt. 3. The Court focuses on "the most important facet of the professional relationship served by this rule of disqualification[,] . . . the preservation of secrets and confidences communicated to the lawyer by the client." *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). "If there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed." *Id.*

The matters here are "substantially related." Mr. Chester stated in a September 2015 declaration that through the course of his divorce proceedings he disclosed to Mr. Longfellow information related to "[his] ownership of Chester Group, the nature and extent of [his] role and the role of the other owners, and [his] involvement in the operation, performance, management . . . of the subsidiary motorcycle dealerships[.]" (Doc. 189, Ex. 9 ¶ 8.) Mr. Chester also shared information about his "lifestyle of long distance motorcycle riding and the awareness of [him], [his] name, and the Chester subsidiary dealerships in the motorcycle riding community . . . ." (*Id.*) Plaintiff relies on these facts in its pending motion for partial summary judgment, which seeks to determine whether the employees of non-party Chester entities related to Defendant Chester Cycles can be counted towards § 1981a(b)'s statutory damages cap. There is a reasonable probability that the confidential information Mr. Chester disclosed to Mr. Longfellow undoubtedly touches on most, if not all, of the elements in the four factor test; as such, "a substantial relation between the two cases is presumed." *Trone*, 621 F.2d at 998.

### 2. Materially Adverse

Plaintiff posits that even if she used the information Mr. Chester disclosed to Mr. Longfellow to successfully raise the statutory damages cap, Chester Cycles remains the sole defendant and thus the increase in possible damages is not materially adverse to Mr. Chester himself. While the existence of possible personal liability would establish material adversity, the non-existence of personal liability does not necessarily dictate a different result. Mr. Chester may not be personally liable, but increasing the possible damages cap may affect his ownership interests nonetheless.

Mr. Chester, as the Court learned during oral argument, now owns one-third of Chester Group. Chester Group wholly owns, through an intermediate subsidiary, the liabilities of Chester Cycles. Plaintiff seeks to increase § 1981a(b)'s statutory damages cap by $250,000. If successful, the increase would have a significant negative effect on the amount of the retained liability of the closely held entity in which Mr. Chester owns a significant interest. Mr. Chester, therefore, while not the named defendant in the successive representation, stands to lose a significant amount of value in his closely held ownership interest.

Furthermore, in order to move for an increase in § 1981a(b)'s damages cap, Plaintiff needed to gather and present evidence to the Court that would satisfy the four factor single employer test. To that end, Plaintiff's Counsel deposed Mr. Chester on topics like his ownership in Chester Group, his involvement with the Chester Dealerships, his personal life as it related to motorcycle riding, and even his divorce. Plaintiff's Counsel then relied on that evidence in its motion.

"[A] lawyer acts directly adversely to a client if it will be necessary for the lawyer to cross-examine a client who appears as a witness in a lawsuit involving another client." E.R. 1.7, cmt. 6. The fact that Plaintiff's Counsel has already directly examined his former client (not a related entity but Mr. Chester himself) to bring the present motion for summary judgment provides sufficient material adversity. Furthermore, by deposing Mr. Chester on issues disclosed during the parties' former representation, Plaintiff's Counsel breached Mr. Chester's confidences. In the Ninth Circuit, simply the mere possibility of such a disclosure of confidential communications is enough to support disqualification. *See Thomas v. Mun. Ct. of Antelope Valley Judicial Dist. of Cal.*, 878 F.2d 285, 290 (9th Cir. 1989) ("Standing alone, this potential for disclosure of confidential communications might be a sufficient basis for a conflict-of-interest finding.").

Finally, because the Court did not grant Plaintiff's motion for partial summary judgment, the issue of whether Chester Cycles and its alleged related non-party entities meet the four factor single employer test is an issue for the jury. Accordingly, Plaintiff's

1  Counsel will need to present the same evidence at trial by calling Mr. Chester as a
2  witness. In addition to likely breaching Mr. Chester's confidences again through its
3  questioning, trial examination raises another issue the Ninth Circuit identifies as a
4  "danger[] [inherent] in a successive representation situation[;] . . . the attorney who has
5  obtained privileged information from the former client may fail to conduct a rigorous
6  cross-examination for fear of misusing that confidential information." *Fitzpatrick v.*
7  *McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989). In other words, Plaintiff's Counsel's
8  ability to thoroughly examine Mr. Chester on relevant subject-matter may be undermined
9  because Plaintiff's counsel's questioning involves privileged information from the former
10 representation. It would be unjust to allow even the possibility for Plaintiff to be
11 prejudiced by inferior trial examination due to her counsel's conflicting interests. *Cf.*
12 *Bicas v. Super. Ct. in & for Pima Cnty.*, 116 Ariz. 69, 73, 567 P.2d 1198, 1202 (Ariz. Ct.
13 App. 1977) (holding that an attorney should avoid even the appearance of representing
14 conflicting interests).

   **C.   Remedy**

16     There is no "rule of automatic disqualification," thus the Court considers a number
17 of factors to determine the proper remedy. *See Research Corp. Techs., Inc.*, 936 F. Supp.
18 at 701 (listing factors for the Court to consider). First, as explained above, Plaintiff's
19 Counsel represents Ms. Plotts in a "substantially related matter in which [Ms. Plotts']
20 interests are materially adverse to the interests of" Mr. Chester, the former client. ER 1.9.
21     Next, disqualification creates prejudice on both sides of this case. Permitting
22 Plaintiff's Counsel to continue to represent Ms. Plotts will likely prejudice Mr. Chester
23 by continuing to infringe on his attorney-client privilege. In order to succeed in
24 increasing Ms. Plotts' potential damages by proving that Chester Cycles and its alleged
25 related non-party entities meet the four factor single employer test, an argument
26 Plaintiff's Counsel is obligated to pursue in its diligent representation of Ms. Plotts,
27 Plaintiff's Counsel has deposed Mr. Chester and will likely have to call him to the stand.
28 The examination process itself potentially prejudices both Mr. Chester and Ms. Plotts as

it could either breach Mr. Chester's attorney-client privilege or limit Plaintiff's Counsel's ability to examine Mr. Chester in establishing the four factor single employer test.

Ms. Plotts also faces prejudice in finding new counsel at this stage in the litigation. However, as the parties agreed at oral argument, disqualification does not void the work that Plaintiff's Counsel has already performed in this case including the issue of whether Chester Cycles and its alleged related non-party entities meet the four factor single employer test—that issue is preserved for trial. Maintaining Plaintiff's Counsel's previous work reasonably limits the hardship to Ms. Plotts since her new counsel will not need to re-litigate the entire matter from the beginning. Moreover, once Ms. Plotts has found new counsel, she will benefit from representation that is unrestricted in its advocacy of her claims. On balance, although prejudice is visible on both sides of this case, it does not outweigh the need to remedy the clear conflict of interest.

The public's perception of the profession will also be negatively affected if Plaintiff's Counsel is allowed to remain on the case. Over the course of his divorce proceedings Mr. Chester felt free to disclose confidential personal anecdotes as well as relevant information about his finances and business interests to his counsel Mr. Longfellow. If Plaintiff's Counsel is permitted to not only sue a related entity of Mr. Chester's, but to argue for increased damages based in part on that disclosed information, the trust underlying the fundamental freedom of communication that is necessary to ensure an effective attorney-client relationship will be injured.

Finally, the Court accounts for the possibility that Defendant is using this motion as a tactical weapon to gain an advantage in this case. The facts do not support such a conclusion. Not until Plaintiff served discovery on Defendant and Mr. Chester related to Mr. Chester's ownership interests and other factors relevant to increasing § 1981a(b)'s damages cap were issues of material adversity presented by this lawsuit. (Doc. 166 at 11.) Soon after learning of the potential conflict, Defendant moved to disqualify. While it can be argued that such a motion inherently benefits Defendant, the Court will adjust the trial schedule to ensure that Plaintiff can retain counsel with enough time to

effectively litigate the remainder of this case.

Accordingly, for the foregoing reasons disqualification is ordered.

### D. Conclusion

Defendant's motion to disqualify Plaintiff's Counsel is granted. Thus, Burch & Cracchiolo, P.A. is disqualified from further participation in this action, except as to any minimal steps that may be needed to coordinate the transfer of complete representation in this action to subsequent counsel.

## III. Mr. Chester's Motion to Intervene

Federal Rule of Civil Procedure 24(a)(2) creates a right to intervene when anyone "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Mr. Chester owns approximately one-third of Chester Group. (Doc. 158, Ex. 7.) Chester Group owns, through an intermediary subsidiary, Chester Cycles. Mr. Chester seeks to intervene as a non-party so as to disqualify Plaintiff's Counsel, because an attorney at Plaintiff's Counsel, which currently represents Plaintiff in this matter, represented Mr. Chester in a prior divorce proceeding. Mr. Chester's interests were adequately represented by Defendant Chester Cycles' motion to disqualify; moreover, since Mr. Chester seeks to intervene as a non-party so as to disqualify Plaintiff's Counsel, his motion to intervene is mooted by the Court's order granting Defendant's motion to disqualify. Mr. Chester's motion is therefore denied.

## IV. Defendant's Motion for Leave

Defendant filed a comprehensive motion for summary judgment on January 28, 2015. (Doc. 81.) Defendant now desires to file a second motion or cross-motion for partial summary judgment on the same issues. The Court does not grant leave to file a motion on an issue that has been previously briefed and decided. Defendant's motion for leave is denied. (Doc. 176.) Plaintiff's motion to strike (Doc. 177) and Defendant's cross-motion for partial summary judgment (Doc. 188) are consequently vacated as moot.

**IT IS HEREBY ORDERED** that:

1. E.B. Chester's motion to intervene (Doc. 157) is **DENIED**.

2. Defendant's motion to seal (Doc. 159) is moot.

3. Defendant's motion to disqualify (Doc. 161) is **GRANTED**. The firm of Burch & Cracchiolo, PA is disqualified from further participation in this action, except as to any minimal steps that may be needed to coordinate the transfer of complete representation in this action to subsequent counsel and must be accomplished **within 30 days** of the date of this Order.

4. Plaintiff's motion for partial summary judgment (Doc. 175) is **DENIED**.

5. Defendant's motion for leave (Doc. 176) is **DENIED**.

6. Plaintiff's motion to strike (Doc. 177) is moot.

7. Plaintiff's motion to seal (Doc. 183) is **GRANTED**. The Clerk of Court is directed to file under seal the lodged Exhibit 15 at Doc. 184.

8. Defendant's cross-motion for partial summary judgment (Doc. 188) is moot.

9. Defendant's motion to strike (Doc. 190) is moot.

10. Plaintiff's motion to strike (Doc. 196) is moot.

11. Defendant's cross-motion for sanctions (Doc. 200) is **DENIED**.

12. All sanctions are **DENIED** and each party is responsible for its own attorney's fees.

Dated this 16th day of February, 2016.

Honorable G. Murray Snow
United States District Judge